The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on May 21, 2019, which may be different from its entry on the record.

**IT IS SO ORDERED.**

**Dated: May 21, 2019**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| EDWARD J. BURANT & LAURA M. BURANT, | ) ) | Case No. 17-17264 |
| Debtors. | ) | Judge Arthur I. Harris |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| BTS TRUCK LEASING, LLC, | ) | Adversary Proceeding |
| Plaintiff. | ) | No. 18-1030 |
| | ) | |
| v. | ) | |
| | ) | |
| EDWARD J. BURANT, | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION[1]

In this adversary proceeding, plaintiff-creditor BTS Truck Leasing, LLC

seeks a determination that two state court judgments entered against the

defendant-debtor, Edward J. Burant, are nondischargeable under 11 U.S.C.

[1] This Opinion is not intended for official publication.

§ 523(a). Following a trial, the Court took the matter under advisement. For the reasons that follow, the Court finds that the $66,000 judgment dated February 23, 2017, is nondischargeable, while the $1,443.75 judgment dated June 29, 2017, is dischargeable.

## JURISDICTION

The Court has jurisdiction over this action. A determination as to the dischargeability of a particular debt is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This Court has jurisdiction over core proceedings pursuant to 28 U.S.C. § 157(a) and 1334 and Local General Order No. 2012-7, entered by the United States District Court for the Northern District of Ohio.

## PROCEDURAL HISTORY

On December 11, 2017, the debtor and his wife, Laura M. Burant, filed a joint petition for relief under Chapter 7 of the Bankruptcy Code (Case No. 17-17264, Docket No. 1). On July 11, 2018, both debtors received a discharge under Chapter 7 (Case No. 17-17264, Docket No. 45).

On March 19, 2018, the creditor filed this adversary proceeding, alleging that the debtors entered into a settlement agreement during a state court proceeding under false pretenses, making the financial obligations under the agreement and resulting judgment nondischargeable under 11 U.S.C. § 523(a)(2)

2

(Adv. Pro. Docket No. 1). The creditor also seeks a nondischargeability determination regarding $1,443.75 in attorney's fees and costs that the state court imposed for debtor Edward J. Burant's repeated failure to attend a debtor's examination. *Id.*

On February 1, 2019, the Court dismissed codebtor Laura M. Burant because she was not a party to the state court judgments that form the basis of the creditor's nondischargeability claim (Adv. Pro. Docket No. 52). On February 1, 2019, the Court also denied the creditor's motion for summary judgment, noting that questions of material fact exist as to a number of elements needed to establish nondischargeability under § 523(a)(2)(A) and citing *Rembert v. AT&T Universal (In re Rembert)*, 141 F.3d 277 (6th Cir. 1998), and *Archer v. Warner*, 123 S. Ct. 1462 (2003) (Adv. Pro. Docket No. 51).

A trial was held on April 2, 2019. The Court heard testimony from Kevin Speight, the creditor's chief financial officer; the debtor; and Albert Tomechko, the debtor's uncle. Subject to redaction under Bankruptcy Rule 9037, the Court admitted the creditor's exhibits 10 and 12 without objection and exhibits 1, 3-6, and 11 over the debtor's objections. This memorandum constitutes the Court's findings of fact and conclusions of law as required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

3

# FINDINGS OF FACT

The findings of fact contained in this memorandum of opinion reflect the Court's weighing of the evidence, including credibility of the witnesses. "In doing so, the court considered the witnesses' demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language, or nuance of expression." *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005). Even if not specifically mentioned in this decision, the Court considered the testimony of all the trial witnesses and all the exhibits admitted into evidence. Unless otherwise indicated, the following facts were established at trial by a preponderance of the evidence or were stipulated to by the parties.

The parties submitted the following stipulations:

1. Co-Debtors, husband and wife, Edward Burant and Laura Burant, filed their voluntary petition for Chapter 7 bankruptcy on or about December 11, 2017.

2. Plaintiff, BTS Trucking, brought the herein adversary proceeding on or about March 19, 2018, naming both co-Debtors, husband and wife, Edward Burant and Laura Burant, as Defendants.

3. Co-Debtor, Laura Burant, was dismissed as a party on or about Feb. 3, 2019. The sole remaining Defendant is Edward Burant.

4. Plaintiff's Adversary complaint stems from a Stark County Common Pleas Court case, to wit, BTS Truck Leasing, LLC. et al, v GEL Logistics, Inc., et al, Stark County case no. 2015 CV 02164.

4

5. Defendant, Edward Burant, entered into a settlement agreement with BTS Truck Leasing, pursuant to said Stark County case, on or about Jan. 13, 2017.

6. Plaintiff argues that the debt arising from the said Settlement and Release should be excepted from Discharge under 11 USC §523(a)(2). Defendant denies any fraud, fraudulent intent, insolvency, or any other basis upon which the debt could or should be excepted from discharge, and argues that Plaintiff's claims should be denied and a verdict held in Defendant's favor, ordering that the subject debt is, in fact, dischargeable in his Chapter 7 bankruptcy proceeding.

(Adv. Pro. Docket No. 58).

On August 18, 2014, and April 17, 2015, the creditor and GEL Logistics, Inc. ("GEL Logistics") entered into lease agreements. Pursuant to the lease agreements, GEL Logistics leased four 2015 Mack Chassis trucks from the creditor. The lease agreements included termination clauses, which provided that in the event of default, the creditor was entitled to repossess the trucks and pursue legal remedies. The clauses also provided that GEL Logistics would be liable to the creditor "for the costs, thereof, including reasonable attorneys' fees."

After GEL Logistics missed payments under the lease agreements, both the debtor, who was president of GEL Logistics, and Loren Lutes, who was an employee of GEL Logistics, provided unconditional and continuing personal guarantees for the performance of GEL Logistics under the lease agreements. After GEL Logistics missed more payments, the creditor took action under the

5

termination clause of the lease agreements.  On September 3, 2015, the creditor gave notice of default and shortly thereafter repossessed the trucks.

On October 16, 2015, the creditor filed a complaint in the Stark County Court of Common Pleas, alleging breach of the lease agreements and personal liability by the debtor and Loren Lutes under the terms of their guarantees.  In the complaint, the creditor alleged damages in the amount of $50,150.15, exclusive of "late fees and interest" and "all costs of collection and available recourse under the leases including reasonable attorney's fees and costs."

In October of 2016, counsel for the parties advised the state court that a settlement was imminent.  When no signed agreement was forthcoming, the creditor filed a motion to enforce the unsigned settlement agreement.  The state court held a hearing on the motion to enforce the settlement agreement on December 15, 2016.  In an order dated January 11, 2017, the state court granted the creditor's motion, finding that the parties had reached a meeting of the minds as to a $30,000 upfront payment and additional payments of $4,000 per month for nine months for a total of $66,000, plus a confession of judgment for any outstanding amount.  In exchange, the creditor agreed to dismiss all of its state court claims with prejudice.  Given the passage of time, the state court ordered the payment schedule to be modified so that the $30,000 payment would be due within seven

6

days of the execution of the settlement agreement and the first monthly payment would be due on March 1, 2017.

On or about January 13, 2017, the creditor entered into the signed settlement agreement with the debtor and GEL Logistics consistent with the state court's order dated January 11, 2017. The debtor also executed a cognovit promissory note securing the obligation set forth in the settlement agreement. The note included a confession of judgment for any outstanding amount, in which the debtor waived service of process, permitted the creditor to obtain a judgment "for the amount then appearing due, together with costs of suit, reasonable attorneys' fees and costs, and interest," and waived "all right of trial, appeal, and stay of execution."

When the debtor failed to pay any money after signing the settlement agreement, the creditor obtained a state court judgment on February 23, 2017, pursuant to the terms of the cognovit promissory note and confession of judgment. The judgment awarded the creditor "the principal amount of $66,000, together with costs of suit, reasonable attorney costs and fees and interest as provided thereunder." On February 23, 2017, the creditor and the debtor also entered into an agreed order dismissing the state court case with prejudice.

After the debtor repeatedly failed to appear for a debtor's examination, the creditor obtained another judgment on June 29, 2017. Pursuant to this judgment,

the state court awarded the creditor an additional $1,443.75 in attorney's fees and costs incurred while attempting to schedule and hold the debtor's examination. On December 11, 2017, the debtor and his wife filed a joint petition for relief under Chapter 7 of the Bankruptcy Code.

## CONCLUSIONS OF LAW

The creditor asks the Court to determine that the debts owed to the creditor pursuant to the settlement agreement and the state court judgments are nondischargeable under 11 U.S.C. § 523(a). In seeking an exception to discharge, a creditor bears the burden of proof by a preponderance of the evidence. *See In re Rembert*, 141 F.3d at 281 (citing *Grogan v. Garner*, 498 U.S. 279, 291 (1991)). Discharge exceptions are to be strictly construed in favor of the debtor. *Id.* (citing *Mfrs. Hanover Trust v. Ward (In re Ward)*, 857 F.2d 1082, 1083 (6th Cir. 1988)). The Court will first address the dischargeability of the $66,000 judgment dated February 23, 2017, before addressing the dischargeability of the $1,443.75 judgment dated June 29, 2017.

### I. *$66,000 JUDGMENT*

Section 523 of the Bankruptcy Code provides in pertinent part:

(a) A discharge under section 727. . . of this title does not discharge an individual debtor from any debt –

. . . .

8

> (2) for money, property, services, or an extension, renewal, or
> refinancing of credit, to the extent obtained by –
>> (A) false pretenses, a false representation, or actual fraud, other
>> than a statement respecting the debtor's or an insider's
>> financial condition. . . .

11 U.S.C. § 523(a)(2)(A).  To except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of the loss.  *See In re Rembert*, 141 F.3d at 280-81 (citing *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir. 1993).

The creditor must first prove that the debtor obtained "money, property, services, or an extension, renewal, or refinancing of credit" through false pretenses, a false representation, or actual fraud.  The creditor must also prove that, at the time, the debtor knew the representation was false or made with gross recklessness as to its truth.  A false representation has been defined as "an expressed misrepresentation."  *Wings & Rings, Inc. v. Hoover (In re Hoover)*, 232 B.R. 695, 700 (Bankr. S.D. Ohio 1999) (citing *Hile v. Lewis (In re Lewis)*, 164 B.R. 588, 591 (Bankr. N.D. Ohio 1994)).  Mere silence regarding a material fact may constitute a false representation.  *Id.* (citing *In re Meadows*, 213 B.R. 699, 702 (Bankr. S.D.

9

Ohio 1997)).  False pretenses can involve "an implied representation or conduct that is intended to create and foster a false impression."  *Id.*  Actual fraud is a broader concept defined as "any deceit, artifice, trick or design involving a direct and active operation of mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating a cheat or deception." *Coughlin Chevrolet, Inc. v. Thompson (In re Thompson)*, 458 B.R. 409, 421 (Bankr. S.D. Ohio 2011).  Section 523(a)(2)(A) expressly excludes statements respecting a debtor's or insider's financial condition, whether written or oral, as a basis for nondischargeability.  *See Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1758-59 (2018).

   As the Sixth Circuit noted in *In re Rembert*, a debtor's misrepresentation about the debtor's *ability* to pay is not actionable under § 523(a)(2)(A).  Rather, it is the debtor's misrepresentation about the debtor's *intent* to pay that gives rise to a claim of nondischargeability.  *See* 141 F.3d at 281.  Whether a debtor possessed an intent to defraud a creditor within the scope of § 523(a)(2)(A) is measured by a subjective standard.  *Id.*  To prove intent, the creditor must show "actual or positive fraud, not merely fraud implied by law," meaning that the debtor must have acted "maliciously and in bad faith."  *Id.* (quoting *Anastas v. Am. Sav. Bank (In re Anastas)*, 94 F.3d 1280, 1285-86 (9th Cir. 1996)).  Thus, "the proper inquiry

10

to determine a debtor's fraudulent intent is whether the debtor subjectively intended to repay the debt." *Id.* A debtor's subjective intent must be ascertained by the totality of the circumstances. *Id.* at 282.

The creditor must then prove that it justifiably relied on the false representation. Justifiable reliance is a less demanding standard than reasonable reliance. *See Field v. Mans*, 516 U.S. 59, 71 (1995) (explaining the difference between justifiable reliance and reasonable reliance under the common law, citing extensively the Restatement (Second) of Torts). A creditor may be justified in relying on a representation even if "he might have ascertained the falsity of the representation had he made an investigation." *Id.* at 70. The creditor, however, cannot turn a blind eye where a "patent" falsity could be determined by a "cursory examination or investigation." *Id.* at 71.

Finally, the creditor must prove that the creditor's reliance was the proximate cause of the loss. For purposes of § 523(a)(2)(A), proximate cause may be established by showing the conduct was a substantial factor in the loss, or that the loss may be reasonably expected to follow. *Liberty Savings Bank, FSB v. McClintic (In re McClintic)*, 383 B.R. 689, 694 (Bankr. S.D. Ohio 2008).

The settlement agreement at issue in this case constitutes an "extension, renewal, or refinancing of credit" within the meaning of § 523(a)(2)(A). Before

11

the parties signed the agreement in January 2017, the creditor had an unliquidated claim in state court with an unknown value, based on a personal guarantee for a breach of contract by GEL Logistics. By signing the agreement, the creditor entered into a new promise to forbear on its unpaid indebtedness, while the debtor promised to pay a liquidated amount over a new, extended period of time. The Sixth Circuit has concluded that a creditor's promise to forebear from collection of a debt constitutes an "extension of credit" under § 523(a). *See Wolf v. Campbell (In re Campbell)*, 159 F.3d 963, 966 (6th Cir. 1998).

At trial, the creditor presented evidence that the debtor entered into the settlement agreement on false pretenses, which the debtor knew were false at the time of the agreement's execution. In its order granting the creditor's motion to enforce the unsigned settlement agreement, the state court concluded that "[t]here was a distinct and common intention communicated by each party to the other that they intended to be bound by the agreement" even though the agreement had not yet been signed. In reviewing the negotiations between the parties, the state court found that it was the debtor who initially offered a $66,000 total payment and $30,000 upfront payment on October 10, 2016. While the parties spent additional time discussing the amount and timing of the other monthly payments, the $30,000 upfront payment was "not a disputed term." Accordingly, the state court ordered

12

the parties to sign the agreement and modify the payment terms, with the $30,000 upfront payment due within seven days of execution and the first monthly payment due on March 1, 2017. On or about January 13, 2017, the parties signed a revised settlement agreement, payment schedule, and confession of judgment consistent with the state court's order.

As noted in *In re Rembert*, for a misrepresentation to be actionable under § 523(a)(2)(A), the misrepresentation must be of the debtor's intention to make the payments, not his ability to make the payments. 141 F.3d at 281. The Sixth Circuit decided *In re Rembert* within the context of a credit card transaction, finding that "[t]he use of a credit card represents either an actual or implied intent to repay the debt incurred." Similarly, the execution of a settlement agreement with an extended payment schedule shows an intent to repay according to the agreement's terms.

At trial, the debtor testified that he did not have $30,000 at the time he signed the settlement agreement on or around January 13, 2017. The debtor did, however, testify that he had the ability to borrow money from his uncle or his wife's brother. The debtor's uncle also testified credibly that he was ready, willing, and able to loan the $30,000 if his nephew had asked him for the money. On the other hand, the debtor chose not to borrow the money from his family and

13

said that he instead wanted to grow a new business to pay the debt. The debtor suggested that he signed the agreement hoping that he would find a way out, such as by negotiating an additional extension of time to make the initial payment. But then his wife became ill, and he decided not to make the payments.

Although it is a close question, the Court finds that the creditor has established the first two elements under § 523(a)(2)(A) and *In re Rembert* by a preponderance of the evidence. In other words, the creditor has established that the debtor intended to deceive the creditor when the debtor misrepresented his intention to make the first payment within seven days after signing the settlement agreement. Although the debtor offered a $30,000 upfront payment at the start of settlement negotiations, the creditor has established by a preponderance of the evidence that the debtor had no intention to pay this amount when an agreement was reached in principle or three months later when the agreement was signed by order of the state court. Given the short time between execution of the agreement and the first payment's due date, the Court discounts the debtor's testimony that he intended to make the payments by growing a new business. And although the debtor testified that he had the ability to borrow the money from his family, the debtor never requested such a loan. Had the debtor at least asked his uncle or another family member for the $30,000, and then later changed his mind, it would

14

have been plausible that the debtor had an intention to repay at the time he entered into the settlement agreement. But the record contains no evidence of any such request. Rather, the totality of the circumstances supports the conclusion that the debtor had no intention to pay the $30,000 when there was a meeting of the minds in late 2016 or when the settlement agreement was later signed on or around January 13, 2017.

As for the third element under § 523(a)(2)(A) and *In re Rembert*, the Court finds that the creditor has established by a preponderance of the evidence that the creditor justifiably relied on the debtor's misrepresentation of his intent to make the first payment under the settlement agreement. In finding that this element has been established, the Court emphasizes that the creditor was justified in relying on the debtor's representations that he intended to make the payment, not the debtor's ability to make the payment. The Court also emphasizes the distinction between this third element and the fourth element—damages proximately caused by the creditor's reliance.

As for the fourth element under § 523(a)(2)(A) and *In re Rembert*, the Court also finds that the creditor has established by a preponderance of the evidence that the creditor suffered damages proximately caused by the creditor's reliance on the debtor's promise to make the $30,000 upfront payment and other payments. The

15

Sixth Circuit has held that "a new extension of indebtedness is nondischargeable even if the creditor is unable to show additional damages arising therefrom." *In re Campbell*, 159 F.3d at 964. In *In re Campbell*, the debtor sought to purchase the creditors' interests in a corporation. The debtor agreed to pay half of the purchase price at closing and signed a promissory note for the remaining half. When the debtor later defaulted, he sought a restructuring of the debt by presenting false financial statements to the creditor about his company's financial condition. Consequently, the creditor negotiated new repayment terms and agreed to forebear from collection.

Acknowledging that the underlying debt was nonfraudulent and dischargeable, the Sixth Circuit nevertheless concluded that the "fraudulently obtained new promise to forbear" made the entire extension of credit nondischargeable, "even though the creditor may in fact be no worse off economically." *Id.* at 964. The Sixth Circuit noted that "[t]o hold otherwise would create a perverse incentive for insolvent debtors to lie to creditors to get them to forbear collection of past due indebtedness and would remove the primary legal incentive for fair dealing namely, nondischargeability in bankruptcy when a contract is induced by fraud." *Id.* at 967.

16

In the state court complaint filed in October of 2015, the creditor sought approximately $50,000, plus the cost of repairing the repossessed vehicles, along with costs and attorney's fees. The creditor's chief financial officer then testified that the debtor owed approximately $84,000 at the time the settlement agreement was signed, consisting of compensatory damages and additional interest, fees, and costs. However, the creditor's chief financial officer also conceded that he was not involved in the state court litigation or the settlement negotiations and had no personal knowledge of how much of the $84,000 was due to interest, repair costs, or attorney's fees. The Court acknowledges that the record contains little evidence as to how the parties actually arrived at the $66,000 settlement figure, and it is not clear what role, if any, the promise to make payments played in the decision to accept a cognovit judgment of $66,000 as opposed to some other amount.

However, the holding of the Sixth Circuit in *Campbell* is clear. Although the creditor's original breach of contract and personal guarantee claims would have been dischargeable if the claims had proceeded to judgment, the debtor fraudulently obtained a new promise by the creditor to forbear, albeit briefly, by executing the settlement agreement that included an upfront payment of $30,000. And although the creditor could not prove with any certainty that it was any worse off economically by entering into the settlement agreement, the debtor's fraudulent

17

representation makes the entire $66,000 nondischargeable under § 523(a)(2)(A) and *In re Campbell*.

Presumably, the outcome would have been different had the debtor simply agreed to a $66,000 money judgment or had the settlement agreement contained additional language such as: "the debtor makes no representation that he will actually make any of the payments as scheduled." But because the debtor falsely represented an intent to make an upfront payment of $30,000, his misrepresentation makes the entire $66,000 judgment nondischargeable.

## II. $1,443.75 JUDGMENT

The creditor also asserts that a second judgment from June 29, 2017, awarding $1,443.75 in attorney's fees and costs is nondischargeable under § 523 of the Bankruptcy Code. The state court determined that the creditor incurred the additional attorney's fees and costs due to the debtor's repeated failure to attend a debtor's examination. Based on the creditor's assertions in the adversary complaint, the creditor appears to seek nondischargeability of the attorney's fees and costs under both § 523(a)(2) and § 523(a)(6). For the reasons that follow, the Court finds that the creditor has not proven the elements of either subsection by a preponderance of the evidence.

As previously indicated, a creditor must demonstrate that justifiable reliance on the debtor's fraud was the proximate cause of loss by the creditor to prove that a debt is nondischargeable under § 523(a)(2). *See In re Rembert*, 141 F.3d at 280-81. In this proceeding, the creditor has failed to demonstrate that it incurred the additional attorney's fees and costs due to a false representation by the debtor. At trial, the creditor did not present any evidence showing that the debtor made any false statements during the scheduling of the debtor's examination. Rather, the attorney's fees and costs were incurred as a result of the debtor's repeated failure to attend the examination. Thus, the Court finds that the creditor has not met the elements of § 523(a)(2) for this debt.

In its adversary complaint, the creditor also cites the language of the dischargeability exception under § 523(a)(6), but does not specifically identify the subsection. *See* Complaint at 4 (Docket No. 1) ("Pursuant to *11 U.S.C. § 523(a)(2)*, no discharge will be permitted for the willful and malicious injury by the debtor to another entity or the property of any entity") (emphasis added). The creditor did not develop any argument related to this dischargeability exception in its motion for summary judgment, in its trial brief, or during trial. While the federal rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted," *Johnson v. City of Shelby, Miss.*,

19

___U.S.___, 135 S. Ct. 346, 346 (2014), the evidence must nevertheless demonstrate the elements of the claim for nondischargeability by a preponderance of the evidence. For example, to establish its claim for nondischargeability under § 523(a)(6), the creditor must prove that the attorney's fees and costs were the result of willful and malicious injury by the debtor.

Section 523(a)(6) provides in pertinent part:

(a) A discharge under section 727. . . of this title does not discharge an individual debtor from any debt –
. . . .
(6) for willful and malicious injury by the debtor to another entity or to the property of another entity. . . .

11 U.S.C. § 523(a)(6). The scope of cognizable injuries under § 523(a)(6) is "broad, and refers to an economic injury . . . just the same as a physical assault on an individual[.]" *In re Leist*, 398 B.R. 595, 605 (Bankr. S.D. Ohio 2008). A finding of willfulness requires "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in original). Merely negligent or reckless conduct is insufficient to except a resulting debt from discharge. *Kawaauhau*, 523 U.S. at 62.

Based upon the assertions in the creditor's complaint and the exhibits introduced at trial, the Court finds that the creditor has failed to establish by a preponderance of the evidence that the $1443.75 in attorney's fees and costs were

20

incurred as a result of willful and malicious injury by the debtor. The

June 29, 2017, judgment outlines the court's reasoning for awarding the additional

attorney's fees and costs. Besides failing to appear at several hearings earlier in

the case, the debtor repeatedly moved for continuances of a debtor's examination

originally requested by the creditor on March 10, 2017. As the judgment indicates,

the state court granted two requests for continuance, but when the debtor requested

a third continuance three hours before the rescheduled examination, the state court

denied the request and scheduled a hearing on a creditor's motion for the debtor to

show cause for repeatedly failing to appear. The debtor failed to appear at the

show cause hearing, but filed a motion for extension of time an hour after the

hearing time indicating that he "forgot" about the hearing. The state court denied

this extension and awarded the creditor $1,443.75 in attorney's fees and costs.

While the facts and circumstances of each case are unique, the Court notes

that the June 29, 2017, judgment is somewhat analogous to a pair of judgments for

attorney's fees and costs at issue in an adversary proceeding decided by the

undersigned judge in *Western Reserve Area Agency on Aging v. Mitchell*,

Adv. Pro. No. 13-1222, 2014 WL 6633033 (Bankr. N.D. Ohio Nov. 21, 2014). In

that case, the Court found that one state court sanctions judgment against the

debtor for attorney's fees and costs was nondischargeable under § 523(a)(6), while

21

a second state court sanctions judgment was dischargeable. In determining that the debtor's conduct leading to the first sanctions judgment was due to willful and malicious conduct by the debtor under § 523(a)(6), the Court concluded that the state court's findings demonstrated a clear intent by the debtor to injure the creditor. The state court noted repeated attempts by the debtor to waste the creditor's time and resources by refusing to cooperate with discovery requests, failing to file the necessary pleadings, and pursuing a declaratory action "without legal merit." *Id.* at 17. Notably, the state court characterized the debtor's actions as "[those] of the proverbial bull in a china shop[:] reckless, willful, deliberate, and unhalting." *Id.* at 18. In contrast, the Court held that the second sanctions judgment was dischargeable because the state court record was "comparatively sparse" as to the nature of the debtor's conduct and "did not address [the debtor's] state of mind during the process or expound upon her conduct[.]" *Id.* at 23-24.

In its June 29, 2017, judgment against the current debtor, the state court did indicate that the debtor had "a long history of non-compliance" with the state court's orders. The judgment noted that the debtor failed to appear at court-ordered hearings at least three times before the creditor requested a debtor's examination on March 10, 2017. However, the Court finds that the creditor has failed to show by a preponderance of the evidence that the specific actions by the

22

debtor regarding the debtor's examination—namely, the debtor's repeated requests for continuances and failure to appear at a show cause hearing—caused "willful and malicious injury" to the creditor under § 523(a)(6).

In the *Mitchell* case, the state court indicated that the debtor's repeated refusals to cooperate during state court proceedings and blatant attempts to waste the time and resources were "reckless, willful, deliberate and unhalting". In turn, this Court concluded that the debtor's behavior met the "willful and malicious" standard of § 523(a)(6). But here, the Court does not find that the debtor's motions for continuance demonstrate a willful and malicious intent to harm the creditor. To the extent that the debtor "forgot" about a show cause hearing, which could certainly be considered negligent or even reckless behavior, the Sixth Circuit has concluded that "the lack of an excuse or justification for [a debtor's] actions will not alone make [a] debt nondischargeable under § 523(a)(6)." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 466 n.10 (6th Cir. 1999). Moreover, even if the debtor knew about the show cause hearing and deliberately chose not to attend, the Court still finds that the creditor has failed to establish by a preponderance of the evidence that the debtor actually willed for harm to occur to the creditor by failing to appear. *See id.* at 464 (quoting *Kawaauhau*, 523 U.S. at 61) ("nondischargeability takes a deliberate or intentional *injury*, not merely a

23

deliberate or intentional *act* that leads to injury").  Accordingly, the Court finds

that the June 29, 2017, judgment is dischargeable.

CONCLUSION

For the reasons stated above, the Court finds that the $66,000 judgment

dated February 23, 2017, is nondischargeable under § 523(a)(2)(A), while the

$1,443.75 judgment dated June 29, 2017, is dischargeable.

IT IS SO ORDERED.

24